IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INDIANA AREA SCHOOL DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | Civil Action No.  04-1696 |
| | ) | |
| H.H. by and through his Parents, K.H. and | ) | |
| W.H. | ) | |
| | ) | |
| Defendants. | ) | |

AMBROSE, Chief District Judge.

# OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Defendants', H.H.'s and his parents', Motion for Partial Summary Judgment (Docket No. 7) and Indiana Area School District's ("the District") Motion for Summary Judgment and Redacted Motion for Summary Judgment.  (Docket Nos. 11 and 22).  After careful consideration of the submissions of the parties and for the reasons set forth below, I find that H.H.'s and his parents' Motion for Partial Summary Judgment (Docket No. 7) is denied.  I further find that the District's Motion for Summary Judgment (Docket No. 11) is denied as moot and the District's Redacted Motion for Summary Judgment (Docket No. 22) is granted in part and denied in part.

## I. BACKGROUND

There is no question that H.H. is a resident of the District and that H.H. is an

autistic child qualifying for the protections under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §14000, *et seq.*  His date of birth is August 7, 1996.

On January 3, 2001, Intermediate Unit #28 ("IU28") completed an early intervention ("EI") comprehensive evaluation report ("CER") for H.H.   The CER indicated that H.H. was delayed in speech/language, social skills, self-help, pre-writing skills, and cognitive skills.   H.H.'s needs included play skills including pretend play, social interaction with adults, refining self-help skills, pragmatic functions such as social interaction, seeking information, etc., comprehension and expression of language and to improve his attending to tasks and activities.    The recommendations from the CER indicated that H.H. was eligible for EI services due to autism/PDD-NOS.

On February 16, 2001, IU 28 developed an EI individual education program ("IEP") for H.H.  The IEP was revised on August 16, 2001.  The IEP indicated that H.H. would receive EI services for Head Start, Pre-School, Support Teacher, occupational therapy ("TO"), and Supper Program.   On February 27, 2001, the District processed a permission to evaluate request for H.H. and the parents granted permission.  On May 11, 2001, the District invited the parents to participate in a meeting to conduct a multidisciplinary evaluation ("MDE") and a possible IEP for H.H.  On May 21, 2001, the District developed a CER for H.H., which was designed to help transition H.H. from an EI program into a school-age system within the District.  On May 22, 2001, the District invited the parents to participate in an IEP meeting schedule for June 1, 2001.  On June 1, 2001, an IEP was developed for H.H. for the 2001-2002 school year.

The IEP team developed this document with the understanding that H.H. would attend the District's kindergarten program for ½ day and the LEAP program for ½ day, and that the LEAP program would focus on his academics while the District program would focus on his social skills. Because the parents opted for H.H. to have an additional year of EI, the District was not obligated to provide these additional services to H.H. Rather, the District did this to provide a smother transition for the next year. The parents were provided with progress reports in January and June of 2002.

On June 1, 2001, a notice of recommended assignment ("NORA") was developed for H.H. This recommended supplemental intervention in the resource instructional environment at an alternate regular school as close to his home as possible. Appropriate grouping was life skills support and speech/language ("S/L") support. The parents approved this recommendation. Ms. Sandra Carr, H.H.'s kindergarten teacher at Benjamin Franklin for the 2001-2002 school year, observed him and indicated that he was progressing appropriately, that he seemed relaxed and happy, and that he occasionally needed to be prompted by his therapeutic staff support ("TSS"). In December of 2001, Ms. Jennifer Helm, the life skills support teacher wrote a progress report for H.H. and indicated that he was integrated into Ms. Carr's class and was showing growth in socialization and participating in all small group activities with assistance from the staff. The reports indicated that H.H. was doing well in the program.

On May 7, 2002, the District invited the parents to participate in an IEP

meeting scheduled for May 30, 2002.  The parents developed a document that included measurable annual goals and objectives for social and behavioral, speech therapy ("ST"), TO, and physical education ("PE").  This document was distributed at the IEP meeting of May 30 and June 4, 2002, but was not discussed by the team.  At the meetings, the team developed an IEP for H.H. for the 2002-2003 school year.  There was no behavior intervention plan ("BIP") included in the IEP.  The IEP stated that there was a need for extended school year ("ESY").  This was H.H.'s first full year in the District.

On June 4, 2002, the District developed a notice of recommended educational placement ("NOREP") for H.H.  The parents approved this recommendation for part-time life skills support and itinerant S/L support.  On June 4, 2002, the parents sent a letter to the district requesting that a functional behavioral analysis ("FBA") be conducted on H.H. before the beginning of the next school year so his problematic behaviors could be addressed.

On September 12, 2002, a Planning Alternative Tomorrows with Hope ("PATH") document was developed for H.H.  The team developed a list of H.H.'s interests, strengths, and needs.  They developed goals that were concerned with his behavior, communication, and transitioning from environment to environment.

On October 22, 2002, the District invited the parents to participate in an IEP meeting scheduled for October 30, 2002.  On October 30, 2002, the team developed an IEP for H.H. for the remainder of the 2002-2003 school year.  Progress reports were written on January 10, 2003, March 14, 2003 and May 16, 2003.  In all cases the

4

reports indicated that H.H. was making meaningful progress.

The team determined there was a need for ESY.  H.H. was still included in the half-day kindergarten and he still received a half-day program in life skills.  The IEP stated that H.H. would not participate with non-disabled students when he, the TSS, or the kindergarten teacher determined that a break was needed or the lesson concept or time period would be inappropriate.  In this case, a parallel or alternate activity would be provided or time in a break area would be given.

On February 28, 2003, the District requested permission to re-evaluate H.H. The parents granted permission on March 9, 2003.  On March 10, 2003, the parents completed a District form regarding parental information for H.H.'s re-evaluation. This indicated that H.H. lacked social skills, but tolerated other children around him. Parental concerns included a lack of readiness for first grade and problems with receptive language.  The parents indicated that H.H. required sensory integration throughout the day and continual work on expressive language.

On May 6, 2003, the District invited the parents to attend an IEP scheduled for May 21, 2003.  On May 15, 2003, the District developed an evaluation report ("ER") for H.H.  The parents reported that H.H. was receiving 40 hours of TSS per week from Milestones Community Healthcare (32.5 at school), and that he was getting four hours of services weekly from a behavior specialist.  The MDT recommended that H.H. receive an FBA during the fall of 2003.

On May 21, 2003, the District developed an IEP for H.H.  The IEP did not contain a BIP or measurable annual goals that were concerned with H.H.'s behavioral needs.

On May 21, 2003, the District developed a NOREP for H.H.  The parents approved this on August 15, 2003, but wrote that they would like to have another IEP meeting in September 2003 to revise the IEP and alternative placement.  On August 18, 2003, Mr. Brian Coiner, H.H.'s behavior specialist consultant ("BSC"), completed a Treatment Plan for him from Milestones Community Healthcare for the period 8/23/03 to 10/31/03.

The first day of school in the District for the 2003-2004 school year occurred on August 25, 2003.  Mr. Matthew Hilty was H.H.'s TSS at the beginning of the 2003-2004 school year, and had worked with him during the summer of 2003.  On August 25-27, 2003, Mr. Hilty filed reports that were concerned with treatment goals for H.H.

On August 27, 2003, the District invited the parents to attend an IEP team meeting scheduled for September 4, 2003.  The parents indicated that they would attend.  On August 28, 2003, the parent telephoned Ms. Nancy Geary, H.H.'s first grade teacher in the District for the beginning of the 2003-2004 school year, to find out how H.H. was doing.  The parent asked if Ms. Geary felt that H.H. was a distraction, and if the placement was appropriate.  Ms. Greay said that it was too early in the year to make that determination, but that H.H.'s progress to that time was positive.

On August 28 and 29, 2003, Mr. Hilty filed reports that were concerned with treatment goals for H.H.  On September 2-4, 2003, Mr. Hilty again filed reports that were concerned with treatment goals for H.H.

On September 4, 2003, there was an IEP team meeting at the request of the

parents.  The parents wanted to restructure H.H.'s school day and decrease the amount of time he was in regular first grade.  They were satisfied with the life skills and learning support components of the program.  Seven school days elapsed when this meeting was held.  During the IEP meeting the parents alleged that H.H. was in the hall on a Sit 'N Spin or in the hall walking for about 160 minutes during the first 6 or 7 days of the school year.  The parents informed the District that they were going to unilaterally withdraw H.H. from the District and place him at Milestones.  Mr. Patrick Scanlon, the coordinator of the special programs for the District, asked the parents to delay the removal of H.H. until he had an opportunity to investigate the Milestones program.  Mr. Scanlon visited Milestones and met with Ms. Karrie Mill, the director of the facility.  At that time, there were no students enrolled.  There were two teachers  hired.  The instructional assistants were still being interviewed.  He was informed that their curriculum could not be released.   Mr. Scanlon concluded that the program was not appropriate for the student at that time.

On September 8, 2003, the District issued a NOREP for H.H.  This recommended placement in a part-time life skills support/learning support class in a regular school as close to home as possible.   The parents did not approve this.   The parents unilaterally placed H.H. at Milestones[1] on September 8, 2003. On September 15, 2003, the parents requested a due process hearing.

A due process hearing was held and on July 30, 2004, the Hearing Officer issued an Order concluding that:

---

[1]Milestones, the private school and Milestones, the community-based provider are not the same agency.  One includes a behavioral aspect and one is a private academic school.

> 1) There were not mitigating circumstances during the 2001-2002 school year; 2) The student was not denied a FAPE [free appropriate public education] by the district during the 2001-2002 school year or the 2002-2003 school year; 3) The district did not provide the student with a FAPE during the 2003-2004 school year; and 4) The parents should be reimbursed for the tuition they have spent for the student's tuition at Milestones for the 2003-2004 school year, but it should be reduced by 10 days.  This should be done within 30 days of this decision if no appeal is filed.

The parents and the District both filed exceptions that, when taken together, challenged every aspect of the decision.  The Order of the Hearing Officer was affirmed by the Special Education Due Process Appeals Panel Review of the Commonwealth of Pennsylvania on September 14, 2004, which further ordered that: 1) H.H. is not entitled to compensatory education, 2) his parents are entitled to tuition reimbursement for Milestones and, 3) his 2003-2004 IEP was inappropriate. (Docket No. 1, Exhibit A).  Pursuant to 22 PA Code §14.64(m), the District appealed this order to the Commonwealth Court of Pennsylvania on October 18, 2004.  *Id.*

In its appeal to the Commonwealth Court of Pennsylvania, the District raised two issues:

> 1.  The Commonwealth of Pennsylvania Department of Education Bureau of Special Education Due Process Appeals Review Panel ("Appeals Panel") erred as a matter of law in concluding that the Indiana Area School District (the "District") denied the student a free and appropriate public education ("FAPE") for procedural errors.

> 2.  The Appeals Panel erred as a matter of law in awarding H.H. tuition reimbursement.

*Id.*   H.H. and his parents removed this case to this Court on November 11, 2004. (Docket No. 1).  On December 10, 2004, H.H. and his parents filed an Answer and Counterclaim.  (Docket No. 2).  The Counterclaim contains the following seven counts:

| Count | Title |
|-------|-------|
| I | Defendants are entitled to submit additional evidence pursuant to the IDEA, 20 U.S.C. §1415(i)(2), (1)(3) and 1415(1) |
| II | Defendants are entitled to *de novo* review as an aggrieved party pursuant to the IDEA |
| III | Defendants are entitled to *de novo* review pursuant to §504 and the ADA as an aggrieved party from the orders of the Hearing Officer and the Appeals Panel |
| IV | Defendants are entitled to money damages for violations of the IDEA |
| V | Defendants are entitled to money damages pursuant to 42 U.S.C. § 1983 for violations of the IDEA |
| VI | Defendants are entitled to money damages for violations of §504 of the Rehabilitation Act |
| VII | Defendants are entitled to money damages for violation of the ADA |

(Docket No. 2).

On February 22, 2005, the District filed a Motion for Summary Judgment and H.H. and his parent filed a Motion for Partial Summary Judgment.  (Docket Nos. 7 and 11).  On May 11, 2005, H.H. and his parents filed a Motion for Protective Order

requesting that redacted versions of Docket Nos. 11, 12, 13, and 14 be filed by the District. (Docket No. 21). On May 12, 2005, this Court granted said Motion. On May 19, 2005, the District filed its Redacted Motion for Summary Judgment. (Docket No. 22). As a result, the District's original Motion for Summary Judgment is now moot.

On June 30, 2005, the parties entered into a consent order for an injunction and declaratory relief. (Docket No. 27). The consent order was signed by this Court on July 7, 2005. Therein, the parties agreed that District would fund the current educational placement for the 2004-2005 school year and the District agreed to reimburse Defendants $14,800.00 for the tuition paid for the 2004-2005 school year. The parties have also reached an agreement on the educational placement for H.H. for the 2005-2006 school year. The reimbursement and compensatory education claims for the 2003-2004 school year, as well as all other claims, however, are still at issue.

## II. **STANDARD OF REVIEW**

Parents who disagree with the IEP may seek an "impartial due process hearing." 20 U.S.C. §1415(f). After the due process hearing is conducted and the appeals are exhausted, either side may bring a civil action in the district court. 20 U.S.C. §1415(i). The judicial review provision of the IDEA, section 1415(i)(2), provides in relevant part:

> (A) In general. Any party aggrieved...shall have the right to bring a civil action..., which action may be brought in...a district court of the United States without regard to the amount in controversy.
>
> (B) Additional requirements. In any action brought under

this paragraph, the court–

> (i)   shall receive the records of the administrative proceedings;
>
> (ii)   shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C.A. § 1415(i)(2). The phrase "'basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate,' does not mean that courts are free to substitute their own notions of sound education policy for those of the educational agencies they review, but rather that they should give "due weight" to the administrative proceedings." *Susan N. v. Wilson School Dist.,* 70 F.3d 751, 757 (3d Cir. 1995)*, citing Board of Educ. v. Rowley,* 458 U.S. at 205-06 and *Fuhrmann v. East Hanover Bd. of Educ.,* 993 F.2d 1031, 1034 (3d Cir.1993); *Shore Regional High School Bd. of Educ. v. P.S. ex rel. P.S.,* 381 F.3d 194, 199 (3d Cir. 2004). In other words, "'[f]actual findings from the administrative proceedings are to be considered prima facie correct,' and '[i]f a reviewing court fails to adhere to them, it is obliged to explain why.'" *Shore,* 381 F.3d at 199; *S.H. v. State-Operated School Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003). Thus, "[a]s to findings of fact, the proper standard of review for the District Court...is 'modified de novo.' Under this approach, reviewing courts are 'required to defer to the ... [hearing officer's] factual findings unless ... [they] can point to contrary nontestimonial extrinsic evidence on the record,' or 'unless the record read in its entirety would compel a

contrary conclusion.'" *Bucks County Dept. of Mental Health/Mental Retardation v. Pennsylvania,* 379 F.3d 61, 65 (3d Cir. 2004), *quoting S.H.*, 336 F.3d at 270, *quoting, Carlisle Area Sch. v. Scott P.,* 62 F.3d 520, 529 (3d Cir.1995).

### III.  **INTRODUCTION TO THE IDEA**

The IDEA requires state and local educational agencies to ensure that all children with disabilities between the ages of three and twenty-one receive a FAPE. 20 U.S.C. §1400(d)(1)(A).  A FAPE must be tailored to the specific needs of each child through the development of an annual IEP, which must satisfy certain formal and substantive requirements and must be produced with the participation and agreement of parents, teachers, and administrators, through meetings that are subject to procedural requirements, including the right of an unsatisfied party to pursue administrative review, and ultimately, judicial review.  20 U.S.C. §1414(d).  The IEP must include, *inter alia,* a statement of the student's present levels of performance; a statement of measurable annual goals, including benchmarks or short-term objectives; and a statement of the special education and related services and supplementary aids and services to be provided to the child.  20 U.S.C. §1414(d)(1)(A).

### IV.  **H.H. AND HIS PARENTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

### A.  **BURDEN OF PROOF**[2]

---

[2] The heading for Defendants' first argument is titled "[t]he Panel impermissibly shifted the District's FAPE burden of proof to the parents."  (Docket No. 8, p. 5).  The argument section of their brief, however, does not seem to argue about a burden shift, but rather, that the Panel applied the wrong burden upon the District.  *Id.,* at pp. 5-7.  Consequently, I will only address the argument as briefed.

Defendants argue that in situations where children are enrolled in a dual program, the District must prove its program was the "sole" reason for the child's progress. (Docket No. 8, p. 6). To that end, Defendants argue that "[t]he Panel failed to analyze the evidence to determine whether H.H. made progress 'as a result' of the District's services." (Docket No. 8, p. 6). In support of this argument, Defendants cite to only one case: *de Mora v. Dept. of Public Welfare,* 768 A.2d 904, 907 (Pa. Cmmwth. 2001). After reviewing the same, I find that *de Mora* does not stand for the proposition that a district must prove its program is the "sole" reason for the child's progress. To the contrary, the Commonwealth Court held that to determine whether the toddler's IFSP[3] was "appropriate" it was required to "examine whether the record show[ed] that Isabella ha[d] made progress as a result of the services provided by her IFSP," but not "solely" because of the services provided by her IFSP. *de More,* 768 A.2d at 907. In other words, a district has the burden of proving the appropriateness[4] of the IEP it has proposed, and no other. *Carlisle Area School v. Scott P.,* 62 F.3d 520, 533 (3d Cir. 1995).

In this case, I find the Appeal Panel stated the burden correctly.

> No researcher could possibly tease out how much of the student's progress was attributable to the district's efforts or to the parent's efforts, or whether the student required discrete trial training to make meaningful progress. That the parents sought and secured additional

---

[3] *de Mora* is a case that involves Individualized Family Service Plans ("IFSP") for infants and toddlers under the age of three. 768 A.2d 904; 20 U.S.C. §1432. In our case, we are dealing with a child that is over 3 years of age. 20 U.S.C. §1412(a)(1)(A).

[4] An appropriate program is one that is reasonably calculated to confer meaningful educational benefit upon student. *See Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982).

> services in order to provide what was best for their child is commendable, but their efforts are not separable from those of the district, which did work with the parents and the other professionals who provided services to the student.  Neither the hearing officer nor this panel can determine whether the school's program produced meaningful benefit, we can only make a judgment as to whether it was "reasonably calculated to do so."

APD, p. 7.  Consequently, summary judgment is not warranted on this ground.

**B.  FAPE FOR THE 2001-2002 AND 2002-2003**

A FAPE must be tailored to the specific needs of each child through the development of an annual IEP, which must satisfy certain procedural and substantive requirements and must be produced with the participation and agreement of parents, teachers, and administrators, through meetings that are subject to procedural requirements, including the right of an unsatisfied party to pursue administrative review, and ultimately, judicial review.  20 U.S.C. §1414(d). The IEP must include, *inter alia,* a statement of the student's present levels of performance; a statement of measurable annual goals, including benchmarks or short-term objectives; and a statement of the special education and related services and supplementary aids and services to be provided to the child.  20 U.S.C. §1414(d)(1)(A).

In essence, Defendants assert that the evaluation reports for H.H. were flawed, and the subsequent IEPs based on the same were, therefore, inappropriate. (Docket No. 8, p. 7-18).  Thus, Defendants argue, that H.H. was denied a FAPE for the 2001-2002 and 2002-2003 school years.  *Id.*  In reviewing this issue, I defer to the credibility determinations of the Hearing Officer, unless contradicted by non-

testimonial evidence of record.

As noted above, the Hearing Officer set forth, at length, specific facts finding that the IEPs contained measurable goals, addressed H.H.'s needs, and were reasonably calculated to provide meaningful benefit to H.H.  (Docket No. 3, Tab 8, pp. 3-15, 26-32; Docket No. 3, Tab 24, Exs. D. 1-5, 7-9, 12-15; Docket No. 3, Tab 23, Exs. P. 1-5, 10, 11).   I agree with these assessments.  I can find no non-testimonial evidence in the record to contradict the credibility determinations of the Hearing Officer and therefore will not disturb them.  Thus, after a review of the entire record, and based on a preponderance of the evidence, I find that H.H. was not denied a FAPE for the 2001-2002 and 2002-2003 school year.  Consequently, summary judgment in favor of the District is warranted.[5]

## C.   COMPENSATORY EDUCATION

Under the IDEA, a qualifying student is entitled to a FAPE until the age of twenty-one.  20 U.S.C. §1412(a)(1)(A).  "An award of compensatory education allows a disabled student to continue beyond age twenty-one in order to make up for the earlier deprivation of a free appropriate public education."  *Ridgewood Bd. of Ed. v. N.E.,* 172 F.3d 238, 249 (3d Cir. 1999).   The denial of an appropriate education creates the right to compensatory education.  *See, M.C. v. Cental Reg. Sch. Dist.,* 81 F.3d 389, 391-92 (3d Cir. 1996).  Defendants assert that they are entitled to the relief of compensatory education for the 2001-2002 and 2002-2003 school years.  (Docket No. 8, pp. 19-20).  Since I have found that H.H. was not denied a FAPE for the 2001-

---

[5]The District filed a cross motion for summary judgment on this issue.  (Docket No. 23, pp. 15-16).

2002 or the 2002-2003 school years, Defendants are not entitled to compensatory relief for those years.  20 U.S.C. §1415(i)(2)(C)(iii); 34 C.F.R.§300.512(b)(3).

Defendants further assert that they are entitled to compensatory education for each half day H.H. attended the District's program without an FBA and a BIP for the 2003-2004 and the 2004-2005 school years.  (Docket No. 8, pp. 19-20).  I disagree. Compensatory education is a remedy due to a student for the failure to receive an appropriate education during a period of time. *Lester H. v. Gilhool,* 916 F.2d 865 (3d Cir. 1990).  Thus, compensatory education is available where the child was not removed to an appropriate placement receiving an appropriate education. *See, e.g. Lester H. v. Gilhool,* 916 F.2d 865 (3d Cir. 1990)("[W]e conclude that Congress, by allowing the courts to fashion an appropriate remedy to cure the deprivation of a child's right to a free appropriate public education, did not intend to offer a remedy [via tuition reimbursement] only to those parents able to afford an alternative private education." ); *M.C.,* 81 F.3d 389 (3d Cir. 1996); *Carlisle Area School Dist. v. Scott,* 62 F.3d 520 (3d Cir. 1990).  The Hearing Officer concluded and I am not disturbing the finding that H.H. received an appropriate education at Milestones. As such, I find that H.H. is not entitled to compensatory education for the 2003-2004 or the 2004-2005 school years while H.H. attended Milestones.

Consequently, summary judgment in favor of the District[6] on the issue of compensatory is education appropriate.

---

[6]The District filed a cross motion for summary judgment on this issue.  (Docket No. 23, pp. 16-18).

## V.  THE DISTRICT'S MOTION FOR SUMMARY JUDGMENT

### A.  STATUTE OF LIMITATIONS AS A BAR TO DEFENDANTS CLAIMS PRIOR TO SEPTEMBER 15, 2002

The District raises the issue of the statute of limitations as a bar to Defendants' claims.  See, Docket No. 23, pp. 3-11.  In opposition, Plaintiff argues that the District waived this issue because it did not appeal the issue before the Appeals Panel.  *See,* Docket No. 17, pp. 1-2.  Upon review of the exceptions and responses filed by the parties before the Appeals Panel, I disagree with Defendants that the District waived this issue.  See, Docket No. 3, Tabs 3-4, 6-7.  The issue was fully briefed and was presented before the Appeals Panel.  *Id.*  Since I find, *infra,* that the Hearing Officer properly found that H.H. was not denied a FAPE for the 2001-2002 and the 2002-2003 school years, however, this issue is now moot.  Consequently, I need not consider this issue any further.

### B.  DENIAL OF A FAPE FOR THE 2003-2004 SCHOOL YEAR

The District's main argument on this issue is that the Hearing Officer erred in concluding that the District did not provide a FAPE for the 2003-2004 school year as a result of not attaching a written behavior intervention plan ("BIP") to the IEP.  *See,* Docket No. 23, pp. 11-15; *see also,* Docket No. 3, Tab 8, p. 33.  After a review of the decision of the Hearing Officer, I disagree with this characterization of the Hearing Officer's findings.  The Hearing Officer held the following:

The IEP team should have made certain that each need

identified by the MDT[7] was addressed with a measurable annual goal and short-term instructional objectives. This is especially true in the area of the student's behavior. The District is responsible for developing an IEP that addresses the student's needs that result from his disability and that enable him to be involved in and progress in the general education curriculum.  34 C.F.R. §300.347(2).  The MDT had recommended that an FBA be conducted during the fall of 2003, and the IEP team had identified the student's behavior as a special consideration and as a need for him to progress in the general education curriculum.  The testimony that was given seemed to indicate that the District was relying on the TSS to deal with the student's behavior.  If that was the case, the Treatment Plan that was developed by Mr. Coiner on 8/18/03 should have been agreed to by the IEP team and attached to the IEP.  The entire team should have been on the same page with the student's BIP. There was no reason why the IEP team couldn't include the TSS and the BSC and develop a BIP that was endorsed by the District and by Milestones Community Healthcare.  It is unacceptable to rely on the TSS to exclusively deal with the student's behavior.  The District should have included a BIP or measurable goals and short-term objectives that dealt with this student's behavior on this IEP.  By failing to do so, the District did not provide the student with a FAPE for the 2003-2004 school year.

\*       \*       \*

In conclusion, the student was denied a FAPE during the 2003-2004 school year because his IEP did not address his behavioral needs.

Docket No. 3, Tab 8, p. 33.   Thus, the Hearing Officer found that H.H. was denied a

FAPE because "the IEP did not address his behavioral needs."  Id.

Moreover, I agree with the conclusions of the Hearing Officer that, based on

the record, H.H. was denied a FAPE for the 2003-2004 school year.  A FAPE must be

---

[7]The needs identified by the MDT included: (1) improve receptive/expressive communication skills, (2) improve social /play skills, (3) decrease inappropriate behaviors (sighting, self-injurious, aggressive), and (4) improve focus and attention.

tailored to the specific needs of each child through the development of an annual IEP. 20 U.S.C. §1414(d).[8]  In this case,

_____

[8]20 U.S.C. §1414(d) provides as follows:

(d) Individualized education programs

&ast;&ast;&ast;&ast;&ast;&ast;

The term "individualized education program" or "IEP" means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section and that includes--

(i) a statement of the child's present levels of educational performance, including-- (I) how the child's disability affects the child's involvement and progress in the general curriculum; or (II) for preschool children, as appropriate, how the disability affects the child's participation in appropriate activities;

(ii) a statement of measurable annual goals, including benchmarks or short-term objectives, related to-- (I) meeting the child's needs that result from the child's disability to enable the child to be involved in and progress in the general curriculum; and (II) meeting each of the child's other educational needs that result from the child's disability;

(iii) a statement of the special education and related services and supplementary aids and services to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child-- (I) to advance appropriately toward attaining the annual goals; (II) to be involved and progress in the general curriculum in accordance with clause (i) and to participate in extracurricular and other nonacademic activities; and (III) to be educated and participate with other children with disabilities and nondisabled children in the activities described in this paragraph;

(iv) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in the activities described in clause (iii);

(v)(I) a statement of any individual modifications in the administration of State or districtwide assessments of student achievement that are needed in order for the child to participate in such assessment; and (II) if the IEP Team determines that the child will not participate in a particular State or districtwide assessment of student achievement (or part of such an assessment), a statement of-- (aa) why that assessment is not appropriate for the child; and (bb) how the child will be assessed;

(vi) the projected date for the beginning of the services and modifications described in clause (iii), and the anticipated frequency, location, and duration of those services and modifications;

(vii)(I) beginning at age 14, and updated annually, a statement of the transition service needs of the child under the applicable components of the child's IEP that focuses on the child's courses of study (such as participation in advanced-placement courses or a vocational education program); (II) beginning at age 16 (or younger, if determined appropriate by the IEP Team), a statement of needed transition services for the child,

19

there is no doubt that H.H.'s behavioral needs (focus, attention, and inappropriate behaviors) required specialized attention because they impeded his learning ability. (Docket No. 3, Tab 23, Exs. D 2-3; Docket No. 3, Tab 20, pp. 115-116).  Even though the IEP team recognized H.H.'s special needs included behaviors (Docket No. 3, Tab 23, Ex. D-3, p. 2; Docket No. 3, Tab 19, pp. 289-91), the IEP did not contain goals or objectives concerned with H.H.'s behaviors nor did it contain a BIP.   Docket No. 3, Tab 23, Ex. D-3.  As a result, the 2003-2004 IEP was not tailored to meet the specific and unique needs of H.H.

The District argues that a procedural error such as this is not a violation of the IDEA because there was no loss of educational opportunity.  (Docket No. 23, pp. 12-13).  I disagree.   It is true that in some instances procedural errors will not result in a violation of the IDEA.  *See, C.M. v. Bd. of Educ. of Union County Regional High School Dist.,*  128 Fed.Appx. 876, *881 (3d Cir. 2005).   In this case, however, where behavior was one of the specific needs of H.H., the failure to address the H.H.'s behavioral needs in any manner in his IEP can be nothing less than a loss of educational opportunity.

---

including, when appropriate, a statement of the interagency responsibilities or any needed linkages; and (III) beginning at least one year before the child reaches the age of majority under State law, a statement that the child has been informed of his or her rights under this chapter, if any, that will transfer to the child on reaching the age of majority under section 1415(m) of this title; and

(viii) a statement of-- (I) how the child's progress toward the annual goals described in clause (ii) will be measured; and (II) how the child's parents will be regularly informed (by such means as periodic report cards), at least as often as parents are informed of their nondisabled children's progress, of-- (aa) their child's progress toward the annual goals described in clause (ii); and (bb) the extent to which that progress is sufficient to enable the child to achieve the goals by the end of the year.

20 U.S.C.A. § 1414(d).

The cases cited by the District do not persuade me otherwise, as it was recognized therein that while there was no BIP attached to the IEP, the behaviors were still addressed. *See, School Bd. of Indep. School Dist. No. 11 v. Renollett,* No. Civ. 02-3698, 2004 WL 2457810 (D. Minn. Nov. 1, 2004). There was nothing presented to me by the District that would cause me to alter the findings of the Hearing Officer. Consequently, the failure of the District to include a behavior plan in H.H.'s IEP results in an IEP that was not reasonably calculated to provide meaningful benefits or meet H.H.'s needs. Therefore, based on a preponderance of the evidence, I find that the District failed to provide a FAPE to H.H. in violation of the IDEA for the school year 2003-2004. Thus, summary judgment in favor of the District on this issue is not warranted.

## C.  DENIAL OF FAPE FOR THE 2001-2002 AND 2002-2003 SCHOOL YEARS

This issue was addressed above in the section under issues raised by Defendants. Therein, I held that H.H. was not denied a FAPE for the 2001-2002 and the 2002-2003 school years. Consequently, summary judgment in favor of the District on this issue is warranted.

## D.  TUITION REIMBURSEMENT

Parents who "unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *School Committee of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,* 471 U.S. 359, 373-374 (1985). For tuition reimbursement to be proper under these circumstances, the student must be denied a FAPE and the

student's private placement must be appropriate.   34 C.F.R. §300.403(c)[9]; *School Committee of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,* 471 U.S. 359, 373-374 (1985). The District argues that the Hearing Officer erred in awarding Defendants tuition reimbursement for the 2003-2004 school year because the Hearing Officer did not provide an analysis of whether the private program was appropriate for H.H. (Docket No. 23, pp. 16-18).  After a review of the record, I find the evidence is to the contrary.

The Hearing Officer made credibility determinations and found that H.H. "is receiving a FAPE at Milestones."  (Docket No. 3, Tab 8, pp. 23-25, 35).  The analysis consisted of evidence related to both Milestones as a whole and H.H. in particular. *Id.*  As a result, I find no merit to the District argument that Defendants are not entitled to an award of tuition reimbursement for the 2003-2004 school year. Therefore, summary judgment in favor of the District on this issue is not warranted.

## E.  COMPENSATORY EDUCATION

This issue was addressed above in the section under issues raised by Defendants.   Therein, I held that Defendants are not entitled to compensatory

---

[9]34 C.F.R. § 300.403(c) provides as follows:

(c) Reimbursement for private school placement. If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate. A parental placement may be found to be appropriate by a hearing officer or a court even if it does not meet the State standards that apply to education provided by the SEA and LEAs.

education.  Consequently, summary judgment in favor of the District on this issue is warranted.

## F.  EVALUATION REPORTS

The District requests summary judgment as to the appropriateness of its evaluation reports ("ERs").  (Docket No. 23, p. 19).  This issue was addressed in assessing whether H.H. was denied a FAPE.

## G.  DEFENDANTS §1983 COUNTERCLAIM

The District argues that the Defendants' §1983 counterclaim must fail because Defendants cannot establish a custom or policy.  (Docket No. 23, p. 20).  For a local governmental entity, such as the District in this case, to be held liable under §1983, a plaintiff must establish that the deprivation of rights was the result of an official policy, custom, or practice.  *Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 690-91 (1978).    In opposition, Defendants suggest that they can proceed with their §1983 counterclaim for money damages without having to show that the deprivation was the result of an official policy, custom, or practice.  (Docket No. 17, pp. 19-20).  Specifically, Defendants assert that where a §1983 action is based on a violation of the IDEA, "all that the plaintiff must show is the statutory violation." *Id.*  To support this theory, Defendants cites to *Joseph M. v. Southeast Delco School Dist.,* No. CIV. A. 99-4645, 2001 WL 283154 (E.D. Pa. March 19, 2001) and *Dombroski v. Wissahickkon School Dist.,* No. Civ. A. 01-5094, 2003 WL 22271654 (E.D. Pa. Sept. 30, 2003).  *Id.*  Neither case is authoritative, and I am not persuaded by the rational of either case.

To begin with, the *Dombroski* case does not provide any analysis, but rather just relies on the *Joseph M.* case for the above proposition.  The *Joseph M.* case, again, provides no analysis, but makes the conclusion and cites to *W.B v. Matula,* 63 F.3d 484 (3d Cir. 1995).  In *Matula,* the Third Circuit held that a plaintiff can sue both under the IDEA and under §1983 based on a violation of the IDEA.  *Id.* at 493-94.  It did not hold, however, that in suing under §1983, a plaintiff would be relieved of the requirement of establishing that the deprivation was the result of an official policy, custom, or practice.  *Id.*   Consequently, I find that to succeed on a claim under §1983 based on a violation of the IDEA, a plaintiff must still establish that the deprivation was the result of a policy, custom, or practice.  *See, Monell, supra.*

Defendants do not come forward with any evidence that IDEA violations here were the result of a policy, custom, or practice.   (Docket No. 17, pp. 19-20).  Therefore, Defendants' §1983 claim must fail.  Consequently, summary judgment in favor of Plaintiff as to Defendants' §1983 counterclaim is warranted.

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDIANA AREA SCHOOL DISTRICT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | )  Civil Action No.  04-1696 |
| | ) |
| H.H. by and through his Parents, K.H. and W.H. | ) |
| | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **25th** day of July, 2005, after consideration of the pending Motions for Summary Judgment, it is ordered that:

1.  Defendants' Motion for Partial Summary Judgment (Docket No. 7) is denied; and

2.  The District's Motion for Summary Judgment (Docket No. 22) is granted in part and denied in part, as follows:

a.  The District's Motion for Summary Judgment as to Defendants' §1983 Counterclaim V is granted;

b.  The District's Motion for Summary Judgment as to compensatory education is granted;

c.  The District's Motion for Summary Judgment is granted to the extent that H.H. was not denied a FAPE for the 2001-2002 and the 2002-2003 school years;

       d.  The  District's  Motion  for  Summary Judgment is denied in all other respects.

It is further ordered that based on my decisions above, the decision of the Appeals Panel is affirmed.

It is also ordered that the District's Motion for Summary Judgment (Docket No. 11) is denied as moot, the issues having been decided via the District's Redacted Motion for Summary Judgment (Docket No. 22).

A pretrial conference in this case is set for Friday, August 12, 2005, at 10:30 A.M. before the undersigned at  the U.S. District Courthouse, 700 Grant Street, Suite 307, Pittsburgh, Pennsylvania.  Counsel shall have settlement authority and parties shall be either in person or available by telephone.

BY THE COURT:

/s/ Donetta W. Ambrose

  Donetta W. Ambrose,
  Chief U. S. District Judge